# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT DAYTON

PATRICIA L. SPARKMAN,                    :

                Plaintiff,

   -vs-

MICHAEL J. ASTRUE,
COMMISSIONER OF
SOCIAL SECURITY,
                Defendant.              :

Case No. 3:09-cv-272

District Judge Walter Herbert Rice
Magistrate Judge Michael R. Merz

## REPORT AND RECOMMENDATIONS

Plaintiff brought this action pursuant to 42 U.S.C. §405(g) for judicial review of the final decision of Defendant Commissioner of Social Security (the "Commissioner") denying Plaintiff's application for Social Security benefits. The case is now before the Court for decision after briefing by the parties directed to the record as a whole.

Judicial review of the Commissioner's decision is limited in scope by the statute which permits judicial review, 42 U.S.C. §405(g).  The Court's sole function is to determine whether the record as a whole contains substantial evidence to support the Commissioner's decision.  The Commissioner's findings must be affirmed if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *citing, Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938); *Landsaw v. Secretary of Health and Human Services*, 803 F.2d 211, 213 (6th Cir. 1986).

Substantial evidence is more than a mere scintilla, but only so much as would be required to prevent a directed verdict (now judgment as a matter of law), against the Commissioner if this case were being tried to a jury.  *Foster v. Bowen*, 853 F.2d 483, 486 (6th Cir. 1988);  *NLRB v. Columbian Enameling & Stamping Co.*, 306 U.S. 292, 300 (1939).

In deciding whether the Commissioner's findings are supported by substantial evidence, the Court must consider the record as a whole.  *Hepner v. Mathews*, 574 F.2d 359 (6th Cir. 1978);  *Houston v. Secretary of Health and Human Services*, 736 F.2d 365  (6th Cir. 1984); *Garner v. Heckler*, 745 F.2d 383 (6th Cir. 1984).  However, the Court may not try the case *de novo*, resolve conflicts in evidence, or decide questions of credibility.  *Garner, supra.*  If the Commissioner's decision is supported by substantial evidence, it must be affirmed even if the Court as a trier of fact would have arrived at a different conclusion.  *Elkins v. Secretary of Health and Human Services*, 658 F.2d  437, 439 (6th Cir. 1981).

To qualify for disability insurance benefits (SSD), a claimant must meet certain insured status requirements, be under age sixty-five, file an application for such benefits, and be under a disability as defined in the Social Security Act, 42 U.S.C. § 423.  To establish disability, a claimant must prove that he or she suffers from a medically determinable physical or mental impairment that can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than twelve months.  42 U.S.C. § 423(d)(1)(A). Secondly, these impairments must render the claimant unable to engage in the claimant's previous work or in any other substantial gainful employment which exists in the national economy.  42 U.S.C. §423(d)(2).

The Commissioner has established a sequential evaluation process for disability

determinations.  20 C.F.R. §404.1520.  First, if the claimant is currently engaged in substantial gainful activity, the claimant is found not disabled.  Second, if the claimant is not presently engaged in substantial gainful activity, the Commissioner determines if the claimant has a severe impairment or impairments;  if not, the claimant is found not disabled. Third, if the claimant has a severe impairment, it is compared with the Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1. If the impairment is listed or is medically equivalent to a listed impairment, the claimant is found disabled and benefits are awarded.  20 C.F.R. §404.1520(d).  Fourth, if the claimant's impairments do not meet or equal a listed impairment, the Commissioner determines if the impairments prevent the claimant from returning to his regular previous employment;  if not, the claimant is found not disabled.  Fifth, if the claimant is unable to return to his regular previous employment, he has established a *prima facie* case of disability and the burden of proof shifts to the Commissioner to show that there is work which exists in significant numbers in the national economy which the claimant can perform.  *Bowen v. Yuckert,* 482 U.S. 137, 145, n.5 (1987).

Plaintiff filed an application for SSD on July 10, 2006, alleging disability from February 23, 2006, due to depression, anxiety, fibromyalgia, borderline personality disorder, degenerative disc disease, and myofacial neck pain.  (Tr. 93-98; 110-18).  Plaintiff's application was denied initially and on reconsideration.  (Tr. 67-70; 72-74).  Administrative Law Judge Amelia Lombardo held a hearing, (Tr. 16-45), and subsequently determined that Plaintiff is not disabled.  (Tr. 56-66).  The Appeals Council denied Plaintiff's request for review, (Tr. 1-4), and Judge Lombardo's decision became the Commissioner's final decision.

In determining that Plaintiff is not disabled, Judge Lombardo found that Plaintiff

has severe depressive disorder, anxiety disorder, borderline personality disorder, and bi-polar disorder, but that she does not have an impairment or combination of impairments that meets or equals the Listings. (Tr. 58, ¶ 3; Tr. 59, ¶ 5). Judge Lombardo also found that Plaintiff has the residual functional capacity to perform a full range of work at all exertional levels with the limitations of simple, repetitive work with no "assembly line" production quotas, no strict supervision, and minimal contact with co-workers and the general public. (Tr. 60, ¶ 6). Judge Lombardo then used section 204.00 of the Grid as a framework for deciding, coupled with a vocational expert's (VE) testimony, and concluded that there is a significant number of jobs in the economy that Plaintiff is capable of performing. (Tr. 65, ¶ 11). Judge Lombardo concluded that Plaintiff is not disabled and therefore not entitled to benefits under the Act. (Tr. 66).

In her Statement of Errors, Plaintiff challenges the Commissioner's findings only with respect to her alleged mental impairments. (Doc. 10). Indeed, while Plaintiff notes she suffers with fibromyalgia, degenerative disc disease, and a history of carpal tunnel syndrome, she acknowledges that the extent of those impairments "is not clear from the record." *Id.* at 3 n.1. Accordingly, the Court will focus its review of the record on the mental health evidence.

Examining psychologist Dr. Flexman reported on June 1, 2004, that Plaintiff had a psychiatric hospitalization in April, 2004, for depression, was presently seeing a counselor twice a month and had been doing so for the past two years, saw a psychiatrist once a month for medication, had a tense posture, and that her facial expressions were anxious. (Tr. 169-72). Dr. Flexman also reported that Plaintiff's speech was appropriate, her affect was intense, she did not display lability, testing indicated she was functioning within the average range for reading and spelling and within the borderline range for calculation abilities, she had some difficulties with

sustained attention to tasks, and her MMPI was valid.  *Id.*  Dr. Flexman noted that testing results revealed Plaintiff's intellectual levels of functioning to be within the average to above-average range, the results were not consistent with an individual who is experiencing early dementia, and that her psychological profiles were all indicative of a moderate to significant amount of anxiety and depression.  *Id.*  Dr. Flexman also noted that Plaintiff was currently taking a significant amount of medication which may be causing some difficulties with her overall cognitive abilities.  *Id.*

Plaintiff was hospitalized for a twenty-three hour observation period April 29-30, 2006, for an apparent accidental drug overdose.  (Tr. 195-206).  At the time of her admission, it was noted that Plaintiff had a previous hospitalization in February, 2006, for treatment of depression and attempting to commit suicide with a knife, that she had poor recall indicating that she was not sure how much pain medication she took prior to her admission, and that she denied feeling suicidal.  *Id.*  Plaintiff was treated and discharged with the diagnoses of recurrent major depression and accidental overdose.  *Id.*

While Plaintiff was under psychiatrist Dr. Patel's care, *infra,* specifically, on May 15, 2006, she underwent implantation of a vagal nerve stimulator for treatment of long-standing severe and recurrent major depression and anxiety disorder.  (Tr. 210-16).

Examining psychologist Dr. Olson reported on September 12, 2006, that Plaintiff graduated from high school, obtained an associate degree, first received outpatient mental health treatment for depression after her first divorce, has been receiving mental health treatment for six years, was first hospitalized for mental health treatment eight years ago, has been hospitalized several times since then, and that she was last hospitalized a couple of months prior to the

5

evaluation because she overdosed. (Tr. 217-22). Dr. Olson also reported that Plaintiff was medically retired from the government, was hostile and very irritable, had fair to good motivation, displayed normal speech and conversation, had a labile affect, and that her mood seemed depressed, down, and discouraged. *Id.* Dr. Olson noted that Plaintiff displayed a few overt signs of anxiety, her mental content and thought processes were normal, she seemed to display some hypervigilance, was oriented, had good concentration and attentional skills, seemed to have some short-term memory difficulties, and that her judgment seemed to be intact. *Id.* Dr. Olson identified Plaintiff's diagnoses as dysthymia, panic disorder without agoraphobia, and borderline personality disorder, and he assigned Plaintiff a GAF of 52. *Id.* Dr. Olson opined that Plaintiff's ability to relate to others was moderately impaired, her ability to understand, remember, and follow instructions seemed fair to possibly mildly impaired, her ability to maintain attention and concentration was mildly to moderately impaired, and her ability to withstand the stress and pressures associated with day-to-day work activity was moderately impaired. *Id.*

Ms. Judy Burch, Plaintiff's mental health counselor, reported on March 7, 2007, that she first saw Plaintiff on December 14, 2004, and last saw her on October 5, 2006, that Plaintiff experienced chronic pain, memory problems, tiredness, depressed mood, and high anxiety, and that she treated Plaintiff with cognitive behavioral therapy, stress and anger management, pain management, and marital therapy. *Id.*

The record contains a copy of treating psychiatrist Dr. Patel's office notes dated January 6, 2005, through July 29, 2008. (Tr. 249-90; 339-40). Those notes reveal that Plaintiff saw Dr. Patel five times in 2005, nine times in 2006, three times on 2007, and twice in 2008. *Id.*

6

When Dr. Patel first evaluated Plaintiff she noted that Plaintiff was alert, oriented, displayed psychomotor retardation, had a sad mood and constricted affect, and that she had a circumstantial thought process. *Id.* Dr. Patel also reported that Plaintiff's short term memory was impaired and that she was anxious. *Id.* Dr. Patel identified Plaintiff's diagnosis as major depression and she assigned Plaintiff a GAF of 50. *Id.* In October, 2007, Dr. Patel reported that Plaintiff had marked restrictions of activities of daily living, marked difficulties in maintaining social functioning, constant deficiencies in concentration, persistence or pace, and repeated episodes of deterioration. *Id.* Dr. Patel also reported that Plaintiff had marked to extreme limitations in making occupational and performance adjustments and moderate to marked to extreme limitations in making personal-social adjustments, that she was on full work restrictions, was not able to manage benefits in her own best interest, and that her prognosis was poor. *Id.*

The record contains a copy of Plaintiff's mental health treatment notes from South Community dated March through July, 2008. (Tr. 291-338). Those records reveal that when Plaintiff was first evaluated by a mental health counselor, the counselor reported that Plaintiff had a history of being hospitalized for treatment of depression, had received out-patient treatment for depression, and that the episodes of depression began when she was a teenager. *Id.* The counselor also reported that Plaintiff's speech was normal, her thought processes were logical, her mood was euthymic, her affect was constricted, she was cooperative, and that her insight and judgment were fair. *Id.* The counselor identified Plaintiff's diagnoses as major depressive disorder, recurrent and moderate, social phobia, and rule out eating disorder; she assigned Plaintiff a GAF of 50. *Id.* The records indicate that the focus of Plaintiff's counseling was Plaintiff's financial concerns, her anger with her husband and dissatisfaction with her

7

marriage, and her having to cope with her son's behaviors. *Id.*

Plaintiff essentially alleges in her Statement of Errors that the Commissioner erred by rejecting Dr. Patel's opinion and by finding that she was less than entirely credible. (Doc. 10).

In support of her first Error, Plaintiff argues that the Commissioner should have given controlling, or at least great, weight to Dr. Patel's October, 2007, opinion.

"In assessing the medical evidence supporting a claim for disability benefits, the ALJ must adhere to certain standards." *Blakley v. Commissioner of Social Security,* 581 F.3d 399, 406 (6th Cir. 2009). "One such standard, known as the treating physician rule, requires the ALJ to generally give greater deference to the opinions of treating physicians than to the opinions of non-treating physicians because

> these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [the claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone of from reports of individual examinations, such as consultative examinations or brief hospitalizations."

*Id.*, *quoting*, *Wilson v. Commissioner of Social Security,* 378 F.3d 541, 544, (6th Cir. 2004), *quoting,* 20 C.F.R. § 404.1527(d)(2).

"The ALJ 'must' give a treating source opinion controlling weight if the treating source opinion is 'well supported by medically acceptable clinical and laboratory diagnostic techniques' and is 'not inconsistent with the other substantial evidence in [the] case record.'" *Blakley,* 581 F.3d at 406*, quoting, Wilson,* 378 F.3d at 544*.* "On the other hand, a Social

8

Security Ruling[1] explains that '[i]t is an error to give an opinion controlling weight simply because it is the opinion of a treating source if it is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or if it is inconsistent with the other substantial evidence in the case record.'" *Blakley, supra, quoting,* Soc. Sec. Rul. 96-2p, 1996 WL 374188, at *2 (July 2, 1996). "If the ALJ does not accord controlling weight to a treating physician, the ALJ must still determine how much weight is appropriate by considering a number of factors, including the length of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and any specialization of the treating physician." *Blakley,* 582 F.3d at 406, *citing, Wilson,* 378 F.3d at 544, *citing* 20 C.F.R. § 404.1527(d)(2).

"Closely associated with the treating physician rule, the regulations require the ALJ to 'always give good reasons in [the] notice of determination or decision for the weight' given to the claimant's treating source's opinion." *Blakley,* 581 F.3d at 406, *citing,* 20 C.F.R. §404.1527(d)(2). "Those good reasons must be 'supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.'" *Blakley,* 581 F.3d at 406-07, *citing,* Soc.Sec.Rule 96-2p, 1996 WL 374188 at *5. "The *Wilson* Court explained the two-fold purpose behind the procedural requirement:

> The requirement of reason-giving exists, in part, to let claimants understand the disposition of their cases, particularly in situations where a claimant knows that his physician has deemed him disabled and therefore might be especially bewildered when told by an administrative bureaucracy that she is not, unless some

---

FN 1.  Although Social Security Rulings do not have the same force and effect as statutes or regulations, "[t]hey are binding on all components of the Social Security Administration" and "represent precedent, final opinions and orders and statements of policy" upon which the agency relies in adjudicating cases. 20 C.F.R. § 402.35(b).

> reason for the agency's decision is supplied. *Snell v. Apfel,* 177 F.3d 128, 134 (2nd Cir. 1999). The requirement also ensures that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule."

*Blakley,* 581 F.3d at 407*, citing, Wilson,* 378 F.3d at 544. "Because the reason-giving requirement exists to ensure that each denied claimant received fair process, the Sixth Circuit has held that an ALJ's 'failure to follow the procedural requirement of identifying the reasons for discounting the opinions and for explaining precisely how those reasons affected the weight' given '*denotes a lack of substantial evidence,* even where the conclusion of the ALJ may be justified based upon the record.'" *Blakley, supra, quoting, Rogers v. Commissioner of Social Security.,* 486 F.3d 234, 253 (6th Cir. 2007)(emphasis in original).

In finding that Dr. Patel's opinion was not entitled to controlling or great weight, Judge Lombardo determined that it was not supported by clinical findings and was inconsistent with other evidence. (Tr. 62).

When she offered her October, 2007, opinion that Plaintiff was essentially unemployable, Dr. Patel failed to support her opinion with any objective or clinical findings. Indeed, the form which Dr. Patel completed requested that she provide the medical/clinical findings that supported her assessment and she failed to provide any whatsoever. In addition, although Dr. Patel opined in October, 2007, that Plaintiff was unemployable, the record reveals that Plaintiff saw Dr. Patel on only three occasions in 2007. While it is true that Plaintiff saw Dr. Patel on nine occasions in 2006, that averages to fewer than one visit per month. If Plaintiff were as limited as Dr. Patel opined, one would expect more intense and frequent treatment.

In addition, Dr. Patel's opinion is inconsistent with other substantial evidence of record. For example, Dr. Olson reported that although she had a labile affect and depressed

mood, Plaintiff displayed normal speech and conversation and few overt signs of anxiety, was oriented, had good concentration and attentional skills, and that her judgment was intact. Dr. Olson also reported that Plaintiff was, at worst, moderately impaired in her abilities to perform some work-related activities. Further, Dr. Patel's opinion is inconsistent with the reviewing experts' opinions. (Tr. 225-42; 248). Finally, Dr. Patel's opinion is inconsistent with Plaintiff's treatment notes from South Community which reveal that Plaintiff displayed normal speech, had logical thought processes, was cooperative, and that her insight and judgment were fair.

Under these facts, the Commissioner has an adequate basis for rejecting Dr. Patel's October, 2007, opinion.

Plaintiff argues next that the Commissioner erred by finding that she was less than entirely credible.

It is, of course, for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant. *Rogers v. Commissioner of Social Security,* 486 F.3d 234, 247 (6th Cir. 2007)(citations omitted). An administrative law judge's credibility findings are entitled to considerable deference and should not be lightly discarded. *See, Villarreal v. Secretary of Health and Human Services,* 818 F.2d 461 (6th Cir. 1987); *Casey v. Secretary of Health and Human Services,* 987 F.2d 1230 (6th Cir. 1993). Determination of credibility related to subjective complaints rests with the ALJ and the ALJ's opportunity to observe the demeanor of the claimant is invaluable and should not be discarded lightly. *Gaffney v. Bowen,* 825 F.2d 98 (6th Cir. 1987).

However, the ALJ is not free to make credibility determinations based solely upon an "intangible or intuitive notion about an individual's credibility." *Rogers, supra* (citation

omitted).  Rather, such determination must find support in the record.  *Id.*  Whenever a claimant's complaints regarding symptoms or their intensity and persistence are not supported by objective medical evidence, the ALJ must make a determination of the credibility of the claimant in connection with his or her complaints "based on a consideration of the entire case record."  *Id.*  The entire case record includes any medical signs and lab findings, the claimant's own complaints of symptoms, any information provided by the treating physicians and others, as well as any other relevant evidence contained in the record.  *Id.*  Consistency between a claimant's symptom complaints and the other evidence in the record tends to support the credibility of the claimant while inconsistency, although not necessarily defeating, should have the opposite effect.  *Id.*

In *Felisky v. Bowen,* 35 F.3d 1027, 1039-40 (6th Cir. 1994), the Court set out seven (7) factors which the ALJ is to consider when evaluating a claimant's subjective complaints. The Court derived those factors from 20 C.F.R. §404.1529(c)(3).  *Id.*   However, while the *Felisky* Court applied each of the factors in the case before it, *Felisky* does not require that the ALJ engage in such an extensive analysis in every decision.  *Bowman v. Chater,* No. 96-3990, 1997 WL764419 at *4 (6th Cir. Nov. 26, 1997).  It does require that in addition to objective medical evidence the ALJ consider non-medical factors.  *Id.*

In rejecting Plaintiff's allegations that she is totally disabled by her alleged mental impairment, Judge Lombardo first identified the *Felisky* factors and discussed those that are relevant to Plaintiff's claims.  (Tr. 63-64).  Judge Lombardo then essentially determined that Plaintiff's allegations were not supported by the medical evidence, that her testimony at the hearing was inconsistent with the record evidence, and that her allegations of total disability

were inconsistent with her performance of a wide range of activities. (Tr. 64).

As noted above, the Commissioner properly rejected Dr. Patel's opinion on the basis, *inter alia,* that it was inconsistent with other mental health evidence of record. Similarly, the Commissioner had an adequate basis for rejecting Plaintiff's allegations because they are not supported by the reports and opinions of Dr. Olson and the reviewing experts as well as Plaintiff's treatment notes from South Community. More importantly, however, Plaintiff's testimony at the hearing as to her activities was inconsistent with other record evidence of her evidence. That record evidence shows that Plaintiff engages in a wide range of activities.

First, the record indicates that after Plaintiff underwent the nerve stimulator implantation, her visits to Dr. Patel decreased from about once a month to only three times in 2007, and two times in 2008. With respect to daily activities, Plaintiff reported to Dr. Olson that she does the household cleaning, goes shopping, does the laundry, takes care of her son who she described as "not an easy child", does gardening, and helps her neighbor with gardening. (Tr. 219). Plaintiff testified at the hearing that she dusts, does the dishes, does the laundry, walks and cleans up after the dogs, and socializes with neighbors. (Tr. 29-33). Additionally, in March, 2008, Plaintiff reported to a counselor at South Community that her husband did not do anything to help around the house, but, in contrast, she testified at the August, 2008, hearing that he performed several household chores including helping to change the beds, the cooking, and the shopping. (Tr. 332, 31).

In view of Plaintiff's inconsistent statements and her performance of a wide range of activities, the Commissioner had an adequate basis for finding that she was less than entirely credible.

The Court's duty on appeal is not to re-weigh the evidence, but to determine whether the decision below is supported by substantial evidence. *See, Raisor v. Schweiker,* 540 F.Supp. 686 (S.D.Ohio 1982). The evidence "must do more than create a suspicion of the existence of the fact to be established. ... [I]t must be enough to justify, if the trial were to a jury, a refusal to direct a verdict when the conclusion sought to be drawn from it is one of fact for the jury." *LeMaster v. Secretary of Health and Human Services,* 802 F.2d 839, 840 (6th Cir. 1986), *quoting, NLRB v. Columbian Enameling & Stamping Co.,* 306 U.S. 292, 300 (1939). The Commissioner's decision in this case is supported by such evidence.

It is therefore recommended that the Commissioner's decision that Plaintiff was not disabled and therefore not entitled to benefits under the Act be affirmed.

June 1, 2010.

*s/ Michael R. Merz*
United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed.R.Civ.P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations. Pursuant to Fed.R.Civ.P. 6(e), this period is automatically extended to seventeen days because this Report is being served by one of the methods of service listed in Fed.R.Civ.P. 5(b)(2)(B), (C), or (D) and may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within fourteen days after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See, United States v. Walters,* 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985).